**1142**

In the Matter of TEXAS EXTRUSION CORP., Debtor.

TEXAS EXTRUSION CORP.,
Plaintiff-Appellant,

v.

LOCKHEED CORP., and Lockheed Finance Corp., et al.,
Defendants-Appellees.

In the Matter of Richard W. PICKENS, Debtor.

Richard W. PICKENS, et al., d/b/a Gold Sun Aluminum, Inc.,
Plaintiffs-Appellants,

v.

LOCKHEED CORP., Daniel C. Stewart, Trustee of Texas Extrusion Corp. & Disbursing Agent, the Official Creditors Committee of Texas Extrusion Corp., Lockheed Finance Corp., and Lockheed California Co., et al., Defendants-Appellees.

In the Matter of PICKENS INDUSTRIES, INC.,
Debtor.

PICKENS INDUSTRIES, INC.,
Plaintiff-Appellant,

v.

LOCKHEED CORPORATION, et al.,
Defendants-Appellees.

In the Matter of Louise PICKENS, Debtor.

Louise PICKENS d/b/a Gold Sun Aluminum, Inc., Plaintiff-Appellant,

v.

LOCKHEED CORPORATION, et al.,
Defendants-Appellees.

Nos. 84–1326, 84–1387, 87–1075, 84–1449, 87–1077, 87–1074 and 87–1076.

United States Court of Appeals,
Fifth Circuit.

May 12, 1988.
Rehearing Denied June 7, 1988.

Emil Lippe, Jr., Edward A. Galloway, Michael D. Mosher, Lippe & Lay, Dallas, Tex., for plaintiffs-appellants in Nos. 84–1326, 84–1387 and 84–1449.

Emil Lippe, Jr., Lippe & Associates, Dallas, Tex., for plaintiffs-appellants in Nos. 87–1074 to 87–1077.

James B. Harris, Sam P. Burford, Debra D. McCullough, Thompson & Knight, Dallas, Tex., for Lockheed, et al.

Stephen A. McCartin, Gardere & Wynn, Dallas, Tex., for official creditors.

David W. Elmquist, Daniel C. Stewart, Winstead, McGuire, Sechrist & Minick, Dallas, Tex., for trustee in Nos. 84–1326, 84–1387 and 84–1449.

Davis W. Elmquist, Winstead, McGuire, Sechrist & Minick, Dallas, Tex., for trustee in Nos. 87–1074 to 87–1077.

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and SANDERS *, District Judge.

* District Judge of the Northern District of Texas, sitting by designation.

1. Apparently it was at the request of Lockheed that Pickens Industries, Inc. be formed and that

JERRE S. WILLIAMS, Circuit Judge:

This case involves the consolidated appeals of the confirmation of a joint plan of reorganization by the four debtors subject to the plan. The four debtors also raise numerous ancillary matters in their various appeals. We affirm.

## I. *Factual Background and Prior Proceedings*

Texas Extrusion Corporation was a manufacturer of hard alloy aluminum extrusions commonly used in aircraft frames. Richard and Louise Pickens, husband and wife, together owned more than 80% of the stock of Pickens Industries, Inc., which in turn owned 100% of the stock of Texas Extrusion. Richard Pickens was the principal operating officer of Texas Extrusion.

In 1979, Texas Extrusion established a contractual relationship with Lockheed Corporation and several of Lockheed's affiliates. Under this arrangement, Lockheed committed itself to purchase certain quantities of hard alloy aluminum extrusions from Texas Extrusion which Texas Extrusion committed itself to produce. Lockheed Finance Corporation, a Lockheed affiliate, loaned Texas Extrusion $5.0 million to modify existing equipment and plant facilities to manufacture the hard alloy aluminum extrusions for the Lockheed contract. Prior to this, Texas Extrusion had manufactured mainly soft alloy extrusions.[1]

Numerous disputes soon arose between Texas Extrusion and Lockheed. Apparently Lockheed's demand for aluminum extrusions from Texas Extrusion decreased substantially. Since the revenues of Texas Extrusion at that time were derived primarily from the Lockheed contract, Texas Extrusion defaulted on its repayment of the $5.0 million loan from Lockheed Finance. In September 1981, Texas Extrusion and Lockheed executed a second group of contracts in an attempt to resolve their disputes.[2] Additional money was loaned to

100% of the stock of Texas Extrusion be transferred to the company.

2. Lockheed claims that in one of the 1981 contracts, Texas Extrusion waived and released all of its claims under the 1979 contracts and that

Texas Extrusion by Lockheed. Despite this attempt at reconciliation, Lockheed was unable to increase its demand for aluminum extrusions from Texas Extrusion or find alternative purchasers, and Texas Extrusion once again defaulted on the repayment of its loan from Lockheed Finance. Texas Extrusion and its parent corporation, Pickens Industries, Inc., filed voluntary petitions for bankruptcy in the Northern District of Texas under Chapter 11 on March 24, 1982. At this point, Texas Extrusion owed Lockheed Finance $7,140,000 in principal and accrued interest on the loans which was secured by liens in substantially all of the assets of Texas Extrusion. Texas Extrusion also had unsecured indebtedness of approximately $4,354,000.

Texas Extrusion, as debtor-in-possession, immediately filed adversary proceedings in the bankruptcy court on March 26, 1982, against Lockheed and Lockheed Finance, alleging fraud, fraudulent conveyances, and breach of contract. Texas Extrusion sought actual damages of $40 million and punitive damages of $80 million.[3]

Richard Pickens filed for personal bankruptcy under Chapter 11 on January 3, 1983, and Louise Pickens filed for personal bankruptcy under Chapter 11 on November 21, 1983. The Pickenses had personally guarantied a portion of the loans from Lockheed Finance. Lockheed had filed suit in federal district court against the Pickenses on December 14, 1982, to recover on the personal guaranties they had executed on the Lockheed loans. The Pickenses also filed a lawsuit as individuals against Lockheed and several of its affiliates (the "individual lawsuit"), on November 15, 1983. This "individual lawsuit" alleged many of the same matters set forth in the "corporate lawsuit" and alleged additionally that Lockheed's conduct had forced the Pickenses to lose personal assets and file for personal bankruptcy. The suit alleged misrepresentation and breach of contract by Lockheed. The Pickenses sought actual and punitive damages of at least $15.5 million.[4]

On September 9, 1983, the United States Trustee for the Northern District of Texas[5] and the Official Creditors' Committee of Texas Extrusion[6] filed an application for the appointment of a trustee for Texas Extrusion in its bankruptcy proceedings. This application was allegedly brought about by Texas Extrusion's actions as debtor-in-possession of accumulating substantial unpaid post-petition liabilities of nearly $1 million. On October 28, 1983, the bankruptcy court granted the application, and on October 31, 1983, the United States Trustee appointed Daniel Stewart as Bank-

the 1981 contracts totally supersede and replace the 1979 contracts. The Pickenses argue that the waiver in the 1981 contract was signed under duress and fraudulent inducement and seek its rescission.

3. This adversary proceeding, the "corporate lawsuit," alleged that Lockheed had approached Richard Pickens and contracted to purchase certain quantities of hard alloy aluminum extrusions from Texas Extrusion for a contract term of 10 years. Texas Extrusion alleged it was required to forego selling to any substantial customers other than Lockheed. Once its expansion was completed, Texas Extrusion alleged that Lockheed breached the contract by refusing to purchase the amounts for which it had contracted. Texas Extrusion alleged that Lockheed continued to purchase aluminum extrusions from other sources even though Texas Extrusion had the ability to supply Lockheed's needs. Texas Extrusion alleged that because it was totally dependent on Lockheed as its only substantial customer, Lockheed's breach rendered Texas Extrusion unable to meet its loan repayment obligations to Lockheed Finance and was forced

into bankruptcy. The "corporate lawsuit" was filed as an adversary proceeding in the bankruptcy court, transferred to the district court, and then referred back to the bankruptcy court.

4. These damages allegedly arose from the loss of personal property which served as collateral for the Pickenses' personal guaranties on the Lockheed loans and from their third party beneficiary interests in the Lockheed contract through their ownership interests in Pickens Industries and Texas Extrusion. This "individual lawsuit" was originally filed in federal district court and assigned to District Court Judge Robert Porter. The case remained there until it was dismissed on April 23, 1984, pursuant to the reorganization plan.

5. *See* former 11 U.S.C. § 1501. These provisions of the Bankruptcy Code were repealed in 1986.

6. This group consisted of the Texas Extrusion creditors holding unsecured claims and was formed pursuant to 11 U.S.C. § 1102.

ruptcy Trustee for Texas Extrusion. On November 21, 1983, Trustee Stewart informed the bankruptcy court that he believed Texas Extrusion could not be operated at a profit and would continue to incur further unpaid post-petition liabilities unless there was an infusion of new capital into the corporation. The bankruptcy court thereupon ordered the cessation of the operations of Texas Extrusion.

On November 23, 1983, Lockheed, which was Texas Extrusion's largest secured creditor, and the Official Creditors' Committee of Texas Extrusion filed a joint plan of reorganization for Texas Extrusion, Pickens Industries, and Richard Pickens. None of these three debtors had filed a plan of reorganization prior to this. Amended plans were later filed on December 23, 1983, and on January 25, 1984, which included the bankruptcy estate of Louise Pickens.[7] The original disclosure statement for the joint plan of reorganization was filed on December 23, 1983, by Lockheed and the Creditors' Committee. The bankruptcy court granted a motion by Lockheed and the Creditors' Committee to shorten the time for objections to the disclosure statement and set a date for the hearing on the disclosure statement for January 13, 1984. After the hearing, during which over 40 objections by the Pickenses to the disclosure statement were considered by the bankruptcy court, the court approved a First Amended Disclosure Statement which incorporated many of the changes requested by the Pickenses. Also on January 13, 1984, Lockheed moved to reduce Louise Pickens' 120–day exclusive time period to file a plan of reorganization and to make the disclosure statement applicable to her estate. On January 24, 1984,

the bankruptcy court signed an order terminating Louise Pickens' exclusive time to file a plan as of 5:00 p.m. that day. The court then included Louise Pickens' case in the joint reorganization and applied the disclosure statement to her estate. The Second Amended Joint Plan of Reorganization ("the Plan") and the approved First Amended Disclosure Statement (the "Disclosure Statement") were filed on January 25, 1984. The bankruptcy court ordered all objections to the Plan be filed by February 17, 1984, and all votes on the Plan be completed by February 21. The court set a hearing on the confirmation of the Plan for February 22, 1984.

One week prior to the scheduled confirmation hearing on the Plan, the debtors retained additional counsel, Barlow & Lippe.[8] The debtors, through attorney Emil Lippe, then instituted a flurry of activity in the bankruptcy proceedings, including: (1) on February 13, 1984, Richard Pickens, through Emil Lippe, mailed a letter to all the creditors in all four bankruptcy proceedings seeking their rejection of the Plan;[9] (2) on February 15, 1984, Louise Pickens converted her bankruptcy proceeding from Chapter 11 to Chapter 7;[10] (3) on February 15, 1984, the debtors filed a motion to allow Pickens Industries to intervene in the corporate lawsuit; (4) on February 16, 1984, the debtors filed a motion to disqualify Lockheed's counsel (Thompson & Knight) from further participation in the proceedings; (5) on February 16, 1984, the debtors filed notices of 3 depositions; (6) on February 17, 1984, Richard and Louise Pickens filed their objections to the confirmation of the Plan; and (7) on February 21, 1984, the debtors filed motions for leave to

---

**7.** The Pickenses have continually asserted that the bankruptcy proceedings of Texas Extrusion, Pickens Industries, Richard Pickens and Louise Pickens have been substantively consolidated without proper court order.

**8.** The bankruptcy court later denied the emergency application of Texas Extrusion to employ Barlow & Lippe as additional counsel. The court approved, however, the applications of the three other debtors to employ Barlow & Lippe as additional counsel. The firm of Palmer, Palmer & Coffee had been representing all four debtors in various capacities prior to this time.

*See Matter of Texas Extrusion,* 836 F.2d 217 (5th Cir.1988).

**9.** The Creditors' Committee filed a motion to hold Richard Pickens and Emil Lippe in contempt for this letter. The bankruptcy court denied the motion.

**10.** On February 21, 1984, Lockheed filed a motion to reconvert Mrs. Pickens' case back to a Chapter 11 proceeding. The court granted this motion on February 22.

amend the corporate and individual lawsuits to advance several new theories of recovery including various anti-trust claims against Lockheed and Cressona Aluminum Company [11] and to increase substantially the requested damages.

The hearing on the confirmation of the Plan began on February 22, 1984, and was completed on March 3, 1984, after four days of testimony. The Bankruptcy Trustee of Texas Extrusion and the Creditors' Committee of Texas Extrusion supported the Plan although only Lockheed and the Creditors' Committee were official proponents of the Plan. Only Lockheed was a proponent of the Plan as to all four of the debtors. No alternative reorganization plans for any of the four debtors were proposed by anyone. On March 3, 1984, the bankruptcy court announced that it was confirming the Plan over the objections of Richard and Louise Pickens and Pickens Industries. The court made lengthy verbal findings of fact at that time. Shortly afterwards, upon the request of the bankruptcy court, Lockheed's counsel, Thompson & Knight, began submitting proposed findings of fact and conclusions of law to the bankruptcy court. No copies of these proposed findings and conclusions were served upon counsel for the Pickenses. Apparently these proposed findings and conclusions went through four drafts and were signed by the bankruptcy judge without the Pickenses or their counsel knowing about any of this until after the fact. On March 20, 1984, the bankruptcy court officially confirmed the Second Amended Joint Plan of Reorganization, and issued its written findings of fact and conclusions of law.

The Plan provided for: (1) the purchase by Cressona Aluminum Company of the principal assets of Texas Extrusion and certain extrusion equipment, land, and improvements belonging to Richard and Louise Pickens with payment going to Lockheed in partial satisfaction of Lockheed's security interest in the purchased property; [12] (2) mutual releases between the debtors and Lockheed with respect to all litigation existing between them, resulting in the dismissal with prejudice of all the lawsuits the parties had against each other (including the debtors' various lawsuits against Lockheed and Lockheed's $7,140,-000 claim against Texas Extrusion); (3) the payment of all first lien indebtedness to third party creditors in the real property of the Richard Pickens sold to Cressona (approximately $450,000); (4) the payment by Lockheed of all allowed post-petition claims, including all administrative expenses, against the debtors in all four estates (approximately $900,000); and (5) the payment by Lockheed to the unsecured creditors in the Texas Extrusion estate in the amount of $475,000 on a pro rata basis. In its order confirming the Plan, the bankruptcy court ordered the conveyances of the real property be free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363. The net result of the Plan was that the debtors received a settlement from Lockheed of approximately $7.0 million for their various lawsuits.

The Pickenses moved that the March 20, 1984, order confirming the Plan and the written findings of fact and conclusions of law be amended and that implementation of the order of confirmation be stayed. The bankruptcy court denied these motions with minor exceptions. On April 9, 1984, the Pickenses filed notice of appeal to the district court on these motions. The Pickenses also sought from the district court a stay of the order of confirmation pending its appeal. After an evidentiary hearing was held before the district court on April 10, 1984, the district court on April 13, 1984, denied the motion for the stay before the district court and affirmed the bankruptcy court's denial of a stay. Applica-

---

**11.** Under the Plan, Cressona was to purchase the principal assets of Texas Extrusion and certain extrusion equipment, land, and improvements belonging to the Pickenses.

**12.** Cressona paid $1.55 million for the assets of Texas Extrusion. Lockheed received this entire amount, having the first lien on these assets. Cressona paid $882,601 for land and improvements owned by Richard Pickens. Lockheed, being a junior lienholder as to these assets, received the amounts remaining after the claims of the first lienholders were satisfied.

tions for an emergency stay and a temporary restraining order were made to this Court on April 13, 1984. This Court after telephonic conference denied these motions.

Also during this time, on April 11, 1984, counsel for the Creditors' Committee of Texas Extrusion sent a demand letter to Richard Ward and Emil Lippe requesting that their client, Richard Pickens, expressly state his willingness, on or before 5:00 P.M. April 12, 1984, to comply with the bankruptcy court's order confirming the Plan and to attend the closing that was tenatively scheduled to occur on April 16, 1984. There was no response to this letter. On April 13, 1984, counsel for the Creditors' Committee filed a motion to apply Bankruptcy Rule 7070 and an application for the appointment of Richard Ward of Palmer, Palmer & Coffee, counsel for the Pickenses, for the purpose of executing the necessary conveyance and release documents on behalf of the Pickenses in the event the Pickenses did not show up for the closing or refused to execute these documents themselves.

On April 16, 1984, a hearing was held on the motion to apply Bankruptcy Rule 7070. The motion was opposed by the Pickenses on the ground that there had been no predicate failure to comply with the order confirming the Plan, or with any other order of the court, by the Pickenses as required by Bankruptcy Rule 7070 and Fed.R.Civ.P. 70. Also at this hearing, counsel for the Creditors' Committee verbally moved that a lis pendens notice previously filed by Emil Lippe on behalf of the debtors be canceled.[13] This lis pendens, which covered the real property on which the Texas Extrusion manufacturing facility was located and which was to be sold to Cressona Aluminum, was filed on March 6, 1984, three

days after the oral confirmation of the Plan by the bankruptcy court.[14]

During the hearing, the bankruptcy court held that a failure by the Pickenses to comply with its order confirming the Plan was not a condition precedent under Fed.R.Civ.P. 70 to the appointment of a third person to perform the ordered acts. The court expressed its concern that Richard Pickens might not execute the documents of conveyance and release at the closing as required. The court declared the notice of lis pendens a nullity and ordered it canceled. In its April 16, 1984, Order the bankruptcy court approved the application of Bankruptcy Rule 7070 and directed Richard Ward to execute and deliver all conveyance and release documents at the time of the closing on behalf of the Pickenses in the event they did not show up at the closing or refused to sign the necessary documents. This order was certified immediately for appeal and affirmed by the district court.

At the closing, which occurred on April 20, 1984, Richard Ward, acting on behalf of the Pickenses pursuant to the court order, executed the documents of conveyance to Cressona Aluminum Company for all the real and personal property and executed the release of the Pickenses' claims against Lockheed. Bankruptcy Trustee Stewart signed the conveyance documents and the release on behalf of Texas Extrusion. Orders of dismissal with prejudice were thereafter entered in the two lawsuits against Lockheed.

Asserting that this Court had jurisdiction under 28 U.S.C. §§ 1291, 1292 and 1293, the Pickenses sought immediate appeal to this Court of several of these actions: (1) the April 16, 1984, district court order approving the bankruptcy court order cancel-

13. During the hearing, counsel for the Creditors' Committee stated that the title insurance company which was issuing the title policy to Cressona covering the real estate being purchased under the Plan had excepted from its coverage the lis pendens notice filed against the subject property. Counsel asked the court to order the Pickenses' counsel under Rule 7070 to execute any documents necessary to release this lis pendens notice.

14. The sole purpose of the lis pendens apparently was to insure that Cressona Aluminum Company had notice of the Pickenses' appeal of the order confirming the Plan. On March 8, 1984, attorney Lippe filed a Supplementary Notice of Lis Pendens stating that the debtors challenged the authority of the bankruptcy court to authorize the sale of the subject property pursuant to 11 U.S.C. § 363.

ing the lis pendens filed by the Pickenses and directing application of Bankruptcy Rule 7070; (2) the dismissal of the Pickenses' individual lawsuit against Lockheed by the district court on April 23, 1984; and (3) the order of the district court denying the Pickenses' motion to stay the effectiveness of the bankruptcy court's order confirming the Plan pending appeal. These appeals were consolidated on May 17, 1984 ("the 1984 appeals").

The relief the Pickenses sought in these 1984 appeals included the reinstatement of the lis pendens effective retroactively to the date of its earlier cancellation and the cancellation of all the deeds of conveyance and the release executed by Richard Ward on behalf of the Pickenses pursuant to Bankruptcy Rule 7070. Lockheed, Trustee Stewart, and the Creditors' Committee filed a motion of dismissal for the 1984 appeals based on this Court's lack of jurisdiction under 28 U.S.C. §§ 1291, 1292, and 1293. We denied this motion on October 9, 1984. This Court, however, delayed hearing these 1984 appeals until the debtors' appeal of the confirmation of the Plan itself was before the Court.

The Pickenses appealed the actual confirmation of the Plan to the district court on April 9, 1984. They moved for the recusal of District Court Judge Robert Porter on the basis that he had previously ruled upon certain ancillary matters relating to the Plan—those subject to the 1984 appeals. They argued that since Judge Porter had in effect already participated in the implementation of the Plan, it was improper for him to act as an appellate judge on the appeal of the Plan. This motion to recuse Judge Porter was denied.

Numerous and voluminous briefs were filed in the appeal to the district court of the confirmation of the Plan. On March 1, 1985, while the appeal to the district court was pending, Emil Lippe filed another Original Complaint and Jury Demand in the United States District Court for the Eastern District of Texas on behalf of all four debtors. This lawsuit alleged essentially the same claims as the earlier proposed amended corporate and individual lawsuits, including the antitrust claims, although these theories of recovery had been polished up somewhat by attorney Lippe in the interim.

District Judge Porter on August 27, 1985, ordered the debtors to refrain from proceeding any further with the lawsuit in the Eastern District pending further order.[15] Judge Porter issued a Memorandum Order on December 30, 1986, affirming the bankruptcy court's confirmation of the Plan. 68 B.R. 712 (N.D.Tex.1986). The Pickenses are now appealing this order to this Court in addition to reurging the matters brought in their 1984 appeals.[16] The case currently before this Court, therefore, involves the consolidated appeals of the four separate bankruptcy estates of the district court's affirmation the bankruptcy court's confirmation of the Plan and also the 1984 appeals.

## II. *Issues from the 1984 Appeals*

### A. Cancellation of the Lis Pendens

■ The notice of lis pendens filed by attorney Lippe on behalf of the debtors on March 6, 1984, and the supplemental notice of lis pendens filed by Lippe on March 8, 1984, were properly declared void by the bankruptcy court and canceled. The bankruptcy court stated during the April 16, 1984, hearing that this notice of lis pendens was in violation of the automatic stays in the bankruptcy proceedings. We do not address that issue but merely hold that the filing of the lis pendens notice was not authorized by Texas statute and thus of no effect.

Tex.Prop.Code Ann. § 12.007(a) describes in general terms those situations in which a lis pendens is authorized by Texas law:

---

**15.** In this same order, Judge Porter denied Lockheed's motion for sanctions against the debtors for filing the 1985 lawsuit and denied the debtor's motion for sanctions against Lockheed for filing the motion for sanctions against the debtors.

**16.** Apparently, Emil Lippe now also represents Texas Extrusion in some capacity, at least by default. *See Matter of Texas Extrusion*, 836 F.2d 217 (5th Cir.1988).

After the plaintiff's statement in an eminent domain proceeding is filed or during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending.

None of these situations was involved in the case at bar. The Pickenses were merely appealing the confirmation of the joint plan of reorganization which had provisions requiring the conveyance of certain real property by the Pickenses. There was no action involving title to this property, over the establishment of an interest in this property, or over the enforcement of an encumbrance against this property. The real property involved was merely to be conveyed to Cressona Aluminum Company.

■ Under such circumstances, it was proper for the bankruptcy court to declare the lis pendens void and call for its immediate cancellation. *Helmsley-Spear of Texas, Inc. v. Blanton,* 699 S.W.2d 643 (Tex. Ct.App.—Houston [14th Dist.] 1985, *no writ*); *Milberg Factors v. Hurwitz-Nordlicht,* 676 S.W.2d 613 (Tex.Ct.App.—Austin 1984, writ ref'd n.r.e.); *Lane v. Fritz,* 404 S.W.2d 110 (Tex.Civ.App.—Corpus Christi 1966, *no writ*). When a lis pendens is not authorized under Texas law, the court need not follow the procedures prescribed by Tex.Prop.Code Ann. § 12.008 to cancel it. *Hemsley-Spear of Texas,* 699 S.W.2d at 645. No additional procedural requirements are mandated by Bankruptcy Rule 9014 for the cancellation of an invalid lis pendens. As the appellants themselves emphasize, state not federal law governs the creation and cancellation of a lis pendens. *Beefy King International, Inc. v. Veigle,* 464 F.2d 1102 (5th Cir.1972).

**B. Application of Rule 70 and the Dismissal of the Individual Lawsuit**

■ The Pickenses raise several issues in their challenge to the bankruptcy court's application of Fed.R.Civ.P. 70 through Bankruptcy Rule 7070 and the appointment of their attorney, Richard Ward, to execute the documents required under the Plan on their behalf if they did not do so. Under the Plan and the court order confirming the Plan, the Pickenses were required to execute a release for the individual lawsuit and documents to convey marketable title to Cressona Aluminum and the Small Business Administration to certain property owned by the Pickenses. The Pickenses claim that a prerequisite to the application of Rule 70 is that a party must first fail to comply with a particular act mandated by court order within the time specified under that court order before the court may direct the act be performed by some other person appointed by the court. They assert that this prerequisite did not occur in this case. They also claim that the bankruptcy court failed to make specific findings of fact pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52 to support the imposition of Rule 70 as to Louise Pickens and Pickens Industries. Finally, they assert that there was not sufficient evidence in the record to support the bankruptcy court's belief that Richard Pickens would not timely perform the acts ordered to be performed by him by the court order confirming the plan.

We express no opinion as to the propriety of the imposition of Rule 70 by a court in anticipation of the failure of a party in the future to perform specific acts required by a court order. If there was error by the bankruptcy court in doing this, we deem it harmless error. 28 U.S.C. § 2111; *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). The Pickenses had the opportunity to show up and execute the necessary conveyance and release documents themselves at the closing. Their attorney merely signed on their behalf once they failed to do so; this was simply a ministerial act. The Pickenses fail to show any harm at all suffered by them because of the imposition of Rule 70 and the appointment of their attorney to act on their behalf in performing these tasks. The Pickenses were required by court order to

execute these documents and would eventually have had to execute them or suffer the imposition of Rule 70. The Pickenses' vague claims of denial of due process therefore do not withstand scrutiny. This alleged error did not affect any of their substantial rights. 28 U.S.C. § 2111.

Even assuming the court was required to make specific findings of fact under Bankruptcy Rule 7052 and Fed.R.Civ.P. 52 to support the imposition of Rule 70 as to Louise Pickens and Pickens Industries, the error of not doing so was harmless. For similar reasons, we decline to rule whether the bankruptcy court erred in determining that it was likely that Richard Pickens would fail timely to perform the acts required of him by the court order confirming the Plan. If there was error, it was harmless.

Overall, we find no merit in the Pickenses' challenges to the bankruptcy court order imposing Rule 70, the district court's approval of this order, and the subsequent dismissal of the individual lawsuit by the district court pursuant to the release signed by Richard Ward on the Pickenses' behalf under Rule 70.

### C. The Requests for Injunctive Relief

We had previously, on April 13, 1984, denied appellants' motion for a stay pending the appeal of the Joint Plan of Reorganization. We now hold that none of the claims from the 1984 appeals have any merit. As a result, there is absolutely no basis upon which injunctive relief can be granted. We deny appellants all the relief requested in their 1984 appeals, leaving for consideration the appeals relating to the Disclosure Statement and the confirmation of the Joint Plan of Reorganization.

### III. *The Disclosure Statement*

The district court did not address the merits of the appellants' appeal of the bankruptcy court order approving the Disclosure Statement. The district court held that it did not have jurisdiction over the appeal of the order approving the Disclosure Statement because the notice of appeal was not timely. We must disagree.

### A. Appealability of a Disclosure Statement

▮ Clearly, a district court lacks jurisdiction over an appeal from a bankruptcy court that is not timely filed. *Matter of Robinson*, 640 F.2d 737, 738 (5th Cir.1981). The issue in this case is whether appellants timely filed their notice of appeal concerning the bankruptcy court's order approving the Disclosure Statement so that the district court had jurisdiction over the question of whether that approval was proper. The order approving the First Amended Disclosure Statement was entered on January 25, 1984. Bankruptcy Rules 8001 and 8002 allow ten days to file the notice of appeal from *final* orders of the bankruptcy court. The issue therefore becomes: Was the bankruptcy court order approving the Disclosure Statement a *final* order which must be appealed within ten days under Rule 8002 or forever waived? If the order approving the Disclosure Statement was a final order, then appellants failed to make a timely appeal of the order. Their notice of appeal of this order was made on April 9, 1984, along with their appeal of the order confirming the Plan. The district court held that the bankruptcy court order approving the Disclosure Statement was a final order and dismissed the appeal as to the Disclosure Statement for lack of jurisdiction.

We are not persuaded that a bankruptcy court order approving a disclosure statement is a final order for purposes of appeal. The district court based its conclusion on two independent reasons. The district court's first reason stemmed from an implication found in the language in Bankruptcy Rule 8002(c) that notices of appeal *may* be filed immediately from orders approving disclosure statements, and such notices of appeal or requests to extend the time for filing notices of appeal must be made within ten days. The district court saw this language as implying that such orders are final and therefore *must* be appealed within ten days or the appeal is forever waived. There is also language in the Advisory Committee Note following Rule 8002 that

can be read to imply that a bankruptcy court order approving a disclosure statement is a final order and therefore some indication of appeal must be filed within ten days of its entry or the appeal is forever waived.

We hold, however, that such inferences from the language of the Bankruptcy Rules are not sufficient to establish that bankruptcy court orders approving disclosure statements are final orders. We also have some doubts that such inferences are even necessarily correct. Neither the Bankruptcy Code nor the Bankruptcy Rules expressly set out which orders, judgments, or decrees of the bankruptcy court are final for purposes of appeal, and we hesitate to categorize certain orders as final based on the possible implications of two Bankruptcy Rules. Furthermore, these implications are in clear conflict with case law which sets out the criteria for determining which orders are final for purposes of appeal in the bankruptcy context and with the realities of the bankruptcy process.

Each party has cited only one case actually discussing the appealability of an order approving a disclosure statement. These two cases reach opposite conclusions. *Compare In re Waterville Timeshare Group*, 67 B.R. 412 (Bankr.D.N.H.1986) (approval of a disclosure statement is an interlocutory action) *with In re Synder*, 56 B.R. 1007 (D.Ind.1986) (order approving disclosure statement is a final order). We have found no Circuit court opinions on this issue and only one additional district court opinion. *In re Elsinore Shore Associates*, 82 B.R. 339 (D.N.J.1988) (interlocutory).

Our analysis of analogous case law convinces us that an order approving a disclosure statement is not a final order for purposes of appeal but instead is an interlocutory order. In the nonbankruptcy context, a final order "must generally be 'one which ends the litigation ... and leaves

nothing for the court to do but execute the judgment.'" *Matter of Kutner*, 656 F.2d 1107, 1110 (5th Cir.1981), (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). *See also In re Moody*, 817 F.2d 365, 366–67 (5th Cir.1987); *In re County Management, Inc.*, 788 F.2d 311, 313 (5th Cir.1986). The order sought to be appealed must "conclusively determine substantive rights of parties" in order to be considered final. *In re Delta Services Industries*, 782 F.2d 1267, 1270 (5th Cir.1986). We recognize that the rules as to finality differ somewhat in the bankruptcy context. A case need not be appealed as a "single judicial unit" at the end of the entire bankruptcy proceeding, *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983), but the order must constitute a " 'final determination of the rights of the parties to secure the relief they seek in this suit' " *In re County Management*, 788 F.2d at 313 (quoting *In re Emerald Oil Co.*, 694 F.2d 88, 89 (5th Cir.1982)), or the order must dispose of a discrete dispute within the larger bankruptcy case, *In re Moody*, 817 F.2d at 367, for the order to be considered final.

Under these authorities, the approval of a disclosure statement is only one step in the process of the approval and confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code. By no stretch of the imagination does the approval of a disclosure statement resolve any discrete dispute among the various parties involved within the larger bankruptcy proceeding or determine the rights of the parties to secure their requested relief. *See In re Elsinore Shore Associates; In re Waterville Timeshare Group*, both *supra*. The types of orders that have been held to constitute final orders in the bankruptcy context for purposes of appeal [17] are quite

---

17. For example, an order requiring an individual to turn over a valuable antique coin to the bankruptcy trustee, *In re Moody, supra;* an order holding that a claim was entitled to priority status and thus was not a general unsecured claim, *In re Saco Local Development, supra;* an

order disallowing a homestead exemption, *In re White*, 727 F.2d 884 (9th Cir.1984); and an order directing a debtor to pay the expenses of a creditors' committee, *Matter of UNR Industries, Inc.*, 736 F.2d 1136 (7th Cir.1984).

different from an order approving a disclosure statement.

■ We, of course, are not holding that a party in interest cannot appeal an order approving a disclosure statement immediately upon that order's entry. Rather we are holding that the party does not lose its right to appeal the disclosure statement if it fails to file an immediate appeal. The party can pursue the procedures for obtaining an interlocutory appeal which the district court has discretion to allow.[18] 28 U.S.C. § 158(a). Bankruptcy Rule 8001(b). " '[T]his safety valve ... should serve as adequate protection against the hardships which may be created by erroneous interlocutory bankruptcy court orders.' " *In re Delta Services*, 782 F.2d at 1271, (quoting *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 803 (1st Cir.1985)).[19]

Finally, a blanket rule holding that an order approving a disclosure statement is a final order requiring immediate appeal, or the appeal is forever waived, fails to recognize the mechanics of the confirmation process. A disclosure statement is sent to each of the debtor's creditors, usually along with a copy of the plan of reorganiza-

tion and a ballot, for purposes of informing the creditor and obtaining the creditor's approval of the plan. A creditor may not even receive a copy of the disclosure statement until after ten days from the entry of the order approving the disclosure statement.[20] It is lacking any realism, then, to require that creditor to file a notice of an appeal contesting the order approving the disclosure statement before the creditor even receives the disclosure statement or at least has an opportunity to look closely at either the disclosure statement or the Plan.[21]

### B. Adequacy of the Disclosure Statement

■ Although the district court did not reach the merits of appellants' challenge of the order approving the Disclosure Statement, considerations of judicial economy convince us to address these issues in this appeal. Since orders approving disclosure statements are "core proceedings" under 28 U.S.C. § 157, a district court in reviewing such orders applies the "clearly erroneous" standard to findings of fact and con-

---

**18.** This Court, however, cannot hear appeals from interlocutory orders in bankruptcy cases. Our jurisdiction is limited to appeals from final orders. *In re Delta Services*, 782 F.2d at 1268; 28 U.S.C. § 158(d).

**19.** Bankruptcy Rule 8002 would require notice of an interlocutory appeal, or a motion for extension for filing a notice of appeal, to be made within ten days of the entry of the order. Of course, a party may also appeal the approval of a disclosure statement along with its appeal of the order confirming the plan of reorganization just as it can appeal any other interlocutory order at that time.

**20.** In the case at bar, the bankruptcy court specified that a copy of the Disclosure Statement, a copy of the Plan, and a ballot be transmitted by mail to each of the debtors' creditors within three days of the entry of the order approving the Disclosure Statement. It is not unheard of for mail not to reach a destination within the United States within 7 days.

**21.** In the case at bar, the creditors had until February 21, 1984, to accept or reject the Plan. If we hold that the disclosure statement was a final order, the creditors only had until February 5, 1984, to file their notice of appeal of the order approving the disclosure statement.

We recognize that in this case it is the *debtors* who are contesting the approval of a disclosure statement filed by a creditor and a creditors' committee who were also the proponents of the plan of reorganization. The debtors were well aware of their objections to the disclosure statement at the time the bankruptcy court approved the disclosure statement since their counsel was actively involved in the hearing on the disclosure statement and had previously filed over 40 objections to the disclosure statement on behalf of the debtors. A ten day limitation would place no undue hardship on parties such as these. This is not true, however, in the case of a creditor who is not actively involved in the bankruptcy proceeding and whose primary information regarding the proceeding is derived from the disclosure statement. This is precisely the type of creditor a disclosure statement under 11 U.S.C. § 1125 is addressed to and is meant to inform. A ten day limitation on appeal for such a party is quite unrealistic. Furthermore, it would not be proper, or even consistent, to call an order approving a disclosure statement a final order when the debtor (or someone else who is closely following the bankruptcy proceeding) wants to appeal the order, but an interlocutory order when a relatively uninvolved creditor wants to appeal the order.

siders issues of law de novo. *See* Bankruptcy Rule 8013; 1 Collier on Bankruptcy ¶ 3.03[7] (1979). This Court applies the same standard of review. No purpose would be served in remanding this matter back to the district court—the record is adequate for us to exercise the identical review of the order.

■ 11 U.S.C. § 1125 requires that prior to the solicitation of an acceptance or rejection of a plan of reorganization from a creditor, the creditor must receive a copy of the plan, or a summary of the plan, and a written disclosure statement. The disclosure statement must be approved after notice and a hearing, by the bankruptcy court as containing adequate information. "Adequate information" is defined in 11 U.S.C. § 1125(a) as being "information of a kind, and in sufficient detail, ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."

Appellants assert that "adequate information" was not contained in the Disclosure Statement sent to their creditors. We disagree. The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court. *In re Brandon Mill Farms, Ltd.,* 37 B.R. 190 (Bankr.N.D.Ga. 1984); *In re Stanley Hotel, Inc.,* 13 B.R. 926 (Bankr.D.Co.1981). We find no abuse of discretion in the bankruptcy court's approval of the Disclosure Statement.

While we acknowledge that the importance of the valuation and settlement of the various lawsuits between appellants and Lockheed to the Plan was not emphasized in the Disclosure Statement, we find that the bankruptcy court did not abuse its discretion in holding that the Disclosure Statement nevertheless was adequate to enable a reasonable creditor to make an informed judgment about the Plan. The existence of the various lawsuits was duly noted in the Disclosure Statement, and a concise description of each suit was made. We cannot say that a reasonable creditor did not have adequate information to real-ize the importance of the settlement of the lawsuits to the Plan without being told this in so many words. We also cannot accept appellants' claim that a professional evaluation of the litigation was essential to making the Disclosure Statement adequate. *See In re Werth,* 29 B.R. 220 (Bankr.D.Co. 1983); *In re Stanley Hotel, supra.* Finally, we find that the lack of any discussion of equitable subordination of the Lockheed claims did not undermine the adequacy of the Disclosure Statement. At no time prior to the approval of the Disclosure Statement or at any time since then has any party brought an action against Lockheed for equitable subordination of its claims against the debtors. The mere conjecture that the claims of a creditor might be subject to equitable subordination is not the type of information that is required in a disclosure statement to provide "adequate information" to a creditor. In light of the absence of any action taken by Texas Extrusion's Bankruptcy Trustee or Creditors' Committee to pursue equitable subordination of the Lockheed claims, any statement in the Disclosure Statement explaining this concept was unnecessary.

## IV. *Confirmation of the Joint Plan of Reorganization*

The debtors allege the bankruptcy court made various errors in approving the settlement of the debtors' lawsuits against Lockheed in the confirmation of the Joint Plan of Reorganization. They claim that the court erred in failing to consider their additional causes of action in the amended complaints, including the antitrust claims, in valuing their lawsuits against Lockheed. They further assert that the court relied primarily on the conclusions of Trustee Stewart in valuing the corporate lawsuit, that the court relied on a "spurious" "expert" opinion in giving the individual lawsuit a negligible settlement value, and that the court disregarded the claims of Pickens Industries against Lockheed. Debtors also claim the bankruptcy court totally ignored conclusive and unrebutted evidence that the Plan was proposed in violation of federal antitrust laws.

The antitrust claims of the various debtors against Lockheed were first articulated in the amended corporate complaint submitted to the bankruptcy court and in the amended individual complaint submitted to the district court. Both these amended complaints were submitted only a few days before the beginning of the confirmation hearing on the Joint Plan of Reorganization. This was nearly two years after the original corporate complaint was filed and well after Lockheed's answer was served on the debtors' counsel. Neither the bankruptcy court nor the district court expressly ruled on the motions to file these amended complaints. But the fact that the bankruptcy court did not consider these claims and these two lawsuits were dismissed by the two courts without granting the motions to amend, in essence, constituted denials of the motions to amend the two complaints.

Although leave to amend pleadings must be freely granted when justice so requires, denial of the opportunity to amend a complaint is within the discretion of the trial court after responsive pleadings have been served. Fed.R.Civ.P. 15(a). *In re Westec Corp.*, 434 F.2d 195 (5th Cir. 1970). Under the facts of this case, we hold that the bankruptcy court and the district court did not abuse their discretion in denying the debtors' motions to amend their complaints. The delay in the filing of the amended complaints, the prejudice to the opposing parties, and the existence of the ongoing bankruptcy proceedings all support the denials of these motions to amend. *Ross v. Houston Independent School District*, 699 F.2d 218 (5th Cir. 1983); *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120 (5th Cir.1982). As a result, the bankruptcy court did not err in not addressing the antitrust claims and other additional claims contained in the amended complaints in considering the value of debtors' lawsuits against Lockheed.

The next challenge of the debtors to the bankruptcy court's confirmation of the Plan is that the valuation of the corporate lawsuit by the court was based primarily upon the opinion of Texas Extrusion Trustee Stewart and is otherwise unsupported by the record. The record does not confirm this charge. The bankruptcy court heard testimony from several other experts on the value of the corporate lawsuit. Also, the debtors called three attorneys, Mr. Boyd, Mr. Hytken, and Mr. Sheldon, who testified as to the value of the lawsuit.[22] In addition to the testimony of Trustee Stewart, who was an attorney actively involved in the Texas Extrusion bankruptcy proceeding, the proponents of the Plan called Mr. Price, an attorney from Trustee Stewart's law firm whom Mr. Stewart had earlier consulted in valuing the corporate lawsuit. The court also heard the testimony of Richard Pickens and had the benefit of examining numerous exhibits submitted by the parties. The bankruptcy judge heard from these witnesses a range of numbers for the settlement value of the corporate lawsuit and its probability of success. The bankruptcy judge had discretion in determining the credibility of these witnesses and their ability to derive realistic figures for the settlement value of the lawsuit.

We will not disturb the bankruptcy court's approval of the settlement of this lawsuit contained in the plan of reorganization absent an abuse of discretion by the court. *Matter of Aweco, Inc.*, 725 F.2d 293 (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984); *Matter of Jackson Brewing Co.*, 624 F.2d 599 (5th Cir.1980). We find no such abuse of discretion in this case. The bankruptcy court appears to have reached an "intelligent, objective and educated evaluation" of the settlement value of the corporate lawsuit

---

22. Mr. Boyd and Mr. Hytken were both consulted by Mr. Lippe a few weeks prior to their testimony at the confirmation hearing. They both testified that they had spent only 10–20 hours reviewing the case and had only seen a small number of the relevant documents. Mr. Sheldon had previously represented the debtors in their suits against Lockheed but had withdrawn a few weeks prior to the confirmation hearing when the debtors retained Mr. Lippe.

against a "sufficient factual background." *Matter of Aweco*, 725 F.2d at 299; *Matter of Jackson Brewing*, 624 F.2d at 602. *See also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). It must be remembered that the evaluation of any lawsuit is quite problematic and calls for a significant degree of speculation. The lawsuits in the case at bar were even more difficult to assess because of the minimal discovery undertaken by the debtors. Several factors cast doubt upon the debtors' claims against Lockheed, including the stated waiver in the 1981 contract, the extent to which Texas Extrusion was actually dependent on the Lockheed contract, whether the contract required that Texas Extrusion do business only with Lockheed, and the accuracy of Texas Extrusion's projected profits under the Lockheed contract. Under these circumstances we cannot say that the bankruptcy court abused its discretion in confirming a plan which contained a settlement worth approximately $7.0 million to the four debtors.

■ Although there was some time pressure on the bankruptcy court to approve the settlement and the Plan in general, such pressure is not uncommon in bankruptcy proceedings and does not appear to have unduly influenced the bankruptcy court's determination in this case. *Cf. Matter of Aweco*, 725 F.2d at 299. Finally, both the Bankruptcy Trustee for Texas Extrusion (Stewart) and the chairman of Texas Extrusion Creditors' Committee, expressing the Committee's position, approved the settlement of the lawsuit proposed in the Plan. It must be remembered that in the bankruptcy context, the interests of creditors not the debtors are paramount. Under these circumstances, we conclude that the requirements of 11 U.S.C. § 1129(a)(7) were met.[23]

■ We similarly find no abuse of discretion by the bankruptcy court in giving only nominal value to the individual lawsuit of Richard and Louise Pickens in the § 1129(a)(7) liquidation analyses of their estates. The court heard expert testimony by both sides during the confirmation hearing regarding the settlement value of this lawsuit. Our review of the record finds adequate support for the bankruptcy court's attaching a negligible settlement value on this lawsuit for § 1129(a)(7) purposes.

■ We find no merit at all in the debtors' claim that the bankruptcy court erred in disregarding Pickens Industries' claims against Lockheed in confirming the Plan. The bankruptcy court conducted a proper § 1129(a)(7) analysis for Pickens Industries and in no way erred in ignoring Pickens Industries' alleged claims in the corporate suit in which it was not even a named party.[24]

■ Further, the approval by the bankruptcy court of the payment of $882,601 to the Richard Pickens estate by Cressona was not error. This payment was for the real estate and improvements owned by Mr. Pickens and sold to Cressona pursuant to the Plan. The court heard testimony from two expert appraisers on the value of this property during the confirmation hearing, one presented by the Plan proponents and one presented by the debtors. As expected, the two experts had divergent conclusions. The bankruptcy court had the discretion to judge the credibility of these

**23.** The unsecured creditors of Texas Extrusion did not receive the full value of their claims under the Plan and thus were impaired. Because several of these impaired unsecured creditors voted against the Plan, the Bankruptcy Court was required to determine whether those creditors would receive no less under the Plan than through a liquidation of the company's assets. 11 U.S.C. § 1129(a)(7). The major asset for which a liquidation valuation had to be made was the corporate lawsuit. The evaluation of the settlement value of the corporate lawsuit was therefore made in the context of a § 1129(a)(7) liquidation analysis. A similar liquidation analysis under § 1129(a)(7) was performed for the three other estates.

**24.** Attorney Lippe filed a motion to intervene on behalf of Pickens Industries in the corporate lawsuit. Pickens Industries was also named as a plaintiff in the amended corporate and individual complaints. These actions appear to have been taken not because of any distinct damages that befell Pickens Industries from Lockheed's actions but because the Pickenses and their lawyer had lost control over the corporate lawsuit when the trustee was named for Texas Extrusion.

two experts and the accuracy of their appraisals. Upon a review of the record, we find there was adequate support for valuing the Richard Pickens real estate and improvements at or below $882,601 for purposes of confirming the Plan. Thus there was compliance with § 1129(a)(7) in valuing the Richard Pickens estate.

 Finally, we hold that the bankruptcy court did not err in finding that the proponents of the Plan adequately demonstrated that the Plan had been proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The good faith of a reorganization plan must be "viewed in light of the totality of the circumstances surrounding confection" of the plan. *Matter of Jasik*, 727 F.2d 1379, 1383 (5th Cir.1984); *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983). The bankruptcy judge is in the best position to assess the good faith of the proposal of a plan. *Matter of Jasik*, 727 F.2d at 1383. From our review of the record, we find no error in the bankruptcy court's finding that the Plan met the requirements of 11 U.S.C. § 1129(a)(3). The debtors' last minute claim that the reorganization plan was part and parcel of an alleged conspiracy between Lockheed and the major aluminum companies to drive Texas Extrusion out of business in violation of federal antitrust laws does not prevent the finding of validity in the Plan by the bankruptcy court. The antitrust claims of the debtors were supported only by the testimony of Richard Pickens and possibly a few internal Lockheed documents. The bankruptcy court had the discretion of discounting Mr. Pickens' testimony and attaching a nonsinister meaning to the ambiguous Lockheed documents.

V. *Procedural Issues*

A. Shortening of Louise Pickens' Period for Filing a Plan and Application of the Disclosure Statement to Her Estate

 Louise Pickens filed her bankruptcy petition under Chapter 11 on November 21, 1983. On January 13, 1984, at the close of the hearing on the disclosure statement relating to the Texas Extrusion, Pickens Industries, and Richard Pickens estates, Lockheed moved to reduce Louise Pickens' exclusive time to file her plan of reorganization from the 120–day period established by 11 U.S.C. § 1121(b).[25] The court granted this relief on January 24, 1984, giving Mrs. Pickens until 5:00 p.m. that day to file a plan of reorganization. Mrs. Pickens did not file a plan. Her estate was subsequently included in the joint plan of reorganization previously drawn up for Texas Extrusion, Pickens Industries, and Richard Pickens. The disclosure statement applicable to these three other debtors was applied to her estate also.

At the time of these proceedings, 11 U.S.C. § 1121(d) read: "On request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section." Louise Pickens asserts that there was not "good cause" for reducing her exclusive 120–day period to file a reorganization plan. A review of the record, however, discloses that there was sufficient cause. The filing of Louise Pickens' bankruptcy petition appears to have been an afterthought by her attorneys, who were the same attorneys that represented Texas Extrusion, Pickens Industries, and her husband Richard. The bankruptcy court could draw the inference that the tardy filing, nearly a year after her husband's filing, had as a major purpose the delay of the creditors' efforts at reorganization in the three other related bankruptcy proceedings. Much of Louise Pickens' personal property was community property and had already been involved in her husband's bankruptcy proceedings.

The individual lawsuit against Lockheed, filed on November 15, 1983, one week prior to Mrs. Pickens' bankruptcy filing, named both Mr. and Mrs. Pickens as plaintiffs and

---

**25.** 11 U.S.C. § 1121(b) reads:
Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

thus was part of Richard Pickens' bankruptcy estate also. We find no error in the bankruptcy court's reducing Louise Pickens' exclusive 120–day period to file a reorganization plan under the circumstances of this case. *See In re Crescent Beach Inn, Inc.,* 22 B.R. 155 (Bankr.D.Me.1982); H.R. Rep. No. 595, 95th Cong., 1st Sess. at 406 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6362 ("Cause might include an unusually large or unusually small case, delay by the debtor, or recalcitrance among creditors.")

■ Louise Pickens also asserts that she was deprived of property without due process because the disclosure statement approved for the other three estates was retroactively applied to her estate without prior notice and hearing. We find no merit in this claim. Mrs. Pickens made nothing more than conclusory allegations regarding *what* the property was of which she was deprived by the application of the disclosure statement and *how* the application of the disclosure statement did this. Modifying the disclosure statement to include Mrs. Pickens' estate did not amount to a deprivation of her property without due process of law.

**B. Reconversion of Louise Pickens' Case from a Chapter 7 Proceeding to a Chapter 11 Proceeding**

On February 15, 1984, one week prior to the date the confirmation hearing was scheduled to commence, Louise Pickens moved to convert her case to a Chapter 7 liquidation proceeding. On February 21, 1984, Lockheed filed a motion to reconvert her case back to a Chapter 11 proceeding. The bankruptcy court granted Lockheed's motion on February 22, 1984, at the beginning of the confirmation hearing, over Mrs. Pickens' objection. Mrs. Pickens argues now that she was deprived of proper notice, evidence, and a hearing prior to the reconversion of her case back to a Chapter 11 proceeding.

■ A debtor has the absolute right to convert his or her Chapter 11 case to a Chapter 7 case, 11 U.S.C. § 1112(a), but does not have the right to keep the case in

Chapter 7. 5 Collier on Bankruptcy ¶ 1112.03 (1979). 11 U.S.C. § 706(b) allows a bankruptcy court to convert a case under Chapter 7 to Chapter 11 upon the request of a party in interest after notice and a hearing. These decisions to convert are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest. H.R.Rep. No. 595, 95 Cong., 1st Sess. at 380 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6336; *In re Graham,* 21 B.R. 235, 237 (Bank.N.D.Iowa W.D.1982). We find no abuse of discretion by the bankruptcy court in reconverting Louise Pickens' case from Chapter 7 back to Chapter 11.

The motives of Louise Pickens' counsel in filing her motion to convert her case to a Chapter 7 liquidation one week prior to the confirmation hearing are questionable at best. The bankruptcy court was not unreasonable in finding the primary purpose of the conversion was to interfere with or impede the Chapter 11 reorganization of all four of the debtors. In addition, the same lawyers represented three of the four debtors and were fully conversant with all the facts of the case. Under these circumstances, the one day notice regarding reconversion does not appear to have been unreasonable. The Bankruptcy Code is flexible in allowing the bankruptcy court to fashion notice that is "appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Finally, Louise Pickens did have a hearing on this issue at the beginning of the confirmation hearing. Overall, a review of the record convinces us that the bankruptcy court was properly exercising its discretion in reconverting Louise Pickens' case back to Chapter 11 and that Mrs. Pickens was not deprived of her due process rights by this action.

**C. Alleged Substantive Consolidation of the Four Estates**

Appellants argue next that the operation of the Plan caused, in effect, substantive consolidation of the four separate bankruptcy estates without meeting the stan-

dards for substantive consolidation. Appellants allege that in this case assets belonging to .one estate were improperly used to pay debts of the other estates. *See Matter of Walsh Construction, Inc.,* 669 F.2d 1325 (9th Cir.1982). Appellants assert three specific examples.

■ First, appellants argue that proceeds from the sale under the Plan of assets from the Texas Extrusion and Richard Pickens estates to Cressona Aluminum were used to pay debts of all four estates. Appellants claim $135,000 of the proceeds from the sale to Cressona were used to pay the administrative fees of all four estates. Appellants in this claim are misinterpreting the mechanics of the Plan. Under the Plan, the proceeds from the sale of assets belonging to the Texas Extrusion and Richard Pickens estates remaining after the senior real estate lienholders were paid off were paid over to Lockheed because Lockheed also had liens on all these assets. As part of the settlement of the lawsuits between Lockheed and the various debtors, Lockheed used these proceeds to pay off the various administrative expenses of the four estates. These proceeds were the property of Lockheed and no longer were identifiable with any one of the four estates when used to pay these administrative expenses. Lockheed was free to spend this particular money as it saw fit. Lockheed merely had the obligation to pay the administrative expenses of all four debtors out of its treasury as a partial exchange for the releases of what Lockheed asserted were worthless lawsuits. This agreed payment by Lockheed did not bring about a consolidation of the four estates.

Second, appellants allege that Lockheed improperly used $522.68 from the proceeds of the sale of the Texas Extrusion and Richard Pickens assets to pay the unsecured credit card claims in the Louise Pickens case. Under the same analysis as that stated above, we find there was no substantive consolidation by this payment.

Once again, this $522.68 belonged to Lockheed, which in turn paid the same sum as a partial settlement with the Louise Pickens estate.

■ Third, appellants allege that a $1600 tax claim against the Louise Pickens estate was improperly paid with funds previously paid to the Richard Pickens estate. As best can be determined from the Plan and the record, Louise Pickens appears to have had a valid community property claim under Texas law in the money paid by Lockheed to the Richard Pickens estate pursuant to the Plan and thus a portion of these funds could be used to pay off tax claims of the Louise Pickens estate without bringing about a substantive consolidation. *See* Tex.Fam.Code Ann. § 5.61(c).

■ In addition to these specific alleged claims of improper consolidation, appellants assert that various statements and actions by Lockheed and its attorneys constituted admission of substantive consolidation and that the Plan in general treated the four estates as being consolidated. Our review of the record, however, convinces us there is no merit to these contentions. These statements, actions, and impressions were merely evidence of the complications arising when four separate estates are disposed of in a single plan of reorganization. We find no substantive consolidation of the four estates.

### D. Allowance and Disallowance of Votes

Appellants allege next that the bankruptcy court arbitrarily and in a nonevenhanded fashion accepted or rejected votes on the Plan in total disregard of 11 U.S.C. § 1126(e).[26] Our review of the record, however, reveals no violation of § 1126(e).

■ Appellants assert that the Small Business Administration vote in favor of the Plan should not be allowed because the withdrawal of the SBA's prior vote rejecting the Plan did not comport with the pro-

---

**26.** 11 U.S.C. § 1126(e) reads:
> On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of

such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

cedures of Bankruptcy Rule 3018.[27] The core of appellants' challenge is that the SBA vote change did not occur within the time fixed for the acceptance or rejection of the Plan. The reason why the SBA initially voted against the Plan apparently was because its claims were not adequately treated in the Plan. Louise Pickens failed to tell the Plan proponents of the SBA claim, and the SBA proof of claim against Mrs. Pickens' estate was not received until after the SBA was solicited for its vote. These circumstances appear to have been the result of including the Louise Pickens estate in the Plan at the last minute, and the delay by her lawyers in filing her schedule of assets and liabilities.

Once the Plan proponents were apprised of the SBA claim against the Louise Pickens estate, a minor modification was made to the Plan to settle the SBA claim with a transfer to the SBA of two acres of real estate in Rockwall, Texas, that Mrs. Pickens originally was going to keep. No other creditors in the Louise Pickens estate except Lockheed were affected by this modification since the claims of all of Mrs. Pickens' creditors except for Lockheed's were paid in full. Under the facts of this case we find no error in the bankruptcy court's allowing the SBA to withdraw its rejection of the Plan and vote for the Plan. *See In re Jartran, Inc.*, 44 B.R. 331, 363 (Bankr.N.D. Ill., E.D.1984). *See also* Bankruptcy Rule 3019. To allow this kind of self serving objection to upset resolution of a complicated bankruptcy would make a travesty of the entire bankruptcy process. This observation also applies to a number of the debtors' other picayune objections.

■ Appellants also allege that improper discussions occurred between the attorney for the Creditors' Committee and ALCOMIJ, one of Texas Extrusion's largest unsecured creditors. Appellants allege that the Committee's counsel proposed that if ALCOMIJ voted to accept the Plan, the Committee would attempt to settle ALCOMIJ's claim, which was a matter of some

dispute. A review of the record convinces us that nothing improper occurred through these discussions. A representative of a creditors' committee is authorized to consult with those creditors represented by the committee and to apprise those creditors of the committee's recommendations as to a plan of reorganization. 11 U.S.C. § 1103(c)(3). This authorization logically includes plans by a committee to file future objections as to some of the unsecured claims or to settle such claims. The record discloses no "deals" between the Committee's counsel and ALCOMIJ to secure ALCOMIJ's approval of the Plan in this case. We find no error in the bankruptcy court's failure to take action under 11 U.S.C. § 1126(e) regarding this matter.

■ Appellants also claim that language on the opening page of the Plan confused a number of creditors into thinking that some of the debtors were joining in and proposing the Plan. Richard Pickens testified at the confirmation hearing that a number of people had called him indicating that this had been their impression. Our review of the record convinces us that a complete reading of the Plan, the Disclosure Statement, and the cover letter accompanying the solicitation materials would adequately dispel any such confusion. We find no error in the bankruptcy court's decision not to take action under 11 U.S.C. § 1126(e) on this matter.

■ Finally, appellants appear to claim the bankruptcy court acted improperly, or at least in an unevenhanded manner, in not counting the votes on the Plan that the court thought may have been improperly solicited by the appellants. We find no error in the court's ruling that all the ballots sent to the bankruptcy clerk's office, as per the instructions given by the appellants in their unauthorized solicitation, not be counted. Ballots were supposed to have been sent to the offices of Thompson & Knight according to the instructions in the authorized solicitation materials sent to the creditors. The bankruptcy court was act-

---

**27.** Bankruptcy Rule 3018(a) reads in part:
For cause shown and within the time fixed for acceptance or rejection of a plan, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection.

ing within its discretion under 11 U.S.C. § 1126(e) in not counting the ballots sent to the bankruptcy clerk instead of to Thompson & Knight. We find no unevenhanded application of 11 U.S.C. § 1126(e) in this matter.

### E. The Bankruptcy Court's Written Findings of Fact and Conclusions of Law

■■■ Appellants assert that the written findings of fact and conclusions of law drastically altered the prior verbal findings made by the bankruptcy court and were signed following extensive discussions between the bankruptcy court and Lockheed's counsel. Appellants allege this conduct was in direct violation of Bankruptcy Rule 9003, the Texas Code of Professional Responsibility, and the Texas Code of Judicial Conduct.

Although we have held that the practice of trial judges permitting counsel for a prevailing side to draft the findings of fact and conclusions of law should be discouraged, the practice continues and has not been prohibited. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). *See also, Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The bankruptcy rule and the provisions of the Texas Code of Professional Responsibility and Texas Code of Judicial Conduct cited by appellants do not prohibit such conduct because these provisions refer to communication concerning matters pending before the bankruptcy judge. In the case at bar, the bankruptcy judge had already verbally ruled that he was confirming the Plan. The matter was no longer pending for purposes of these provisions prohibiting ex parte contacts between counsel for a party and a judge in whose court that party's case is pending. *See In re Colony Square, Co.*, 819 F.2d 272 (11th Cir.1987). *Cf. In re Wisconsin Steel Corp.*, 48 B.R. 753 (N.D.Ill.1985).

■■■ Under Bankruptcy Rule 8013, findings of fact made by a bankruptcy judge are not to be set aside unless clearly erroneous. Upon our review of the record, we do not find that these findings are clearly erroneous since we are not left with the definite and firm conviction that a mistake has been committed. *Amstar Corp. v. Domino's Pizza, supra; Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 434 (5th Cir.1977). The bankruptcy judge took an active role in the preparation of the findings in reviewing the four drafts submitted to the court. The court had also previously made lengthy oral findings of fact to support confirmation. Furthermore, the bankruptcy judge conducted a hearing concerning the findings, and appellants' objections to the findings were vigorously presented at that hearing. *See Professional Golfers Association v. Bankers Life & Casualty Co.*, 514 F.2d 665, 672 (5th Cir.1975). Although the written findings obviously do not contain all the facts that appellants wish were there and do contain others that appellants would just as soon forget, we are not left with the conclusion that the findings are illogical or implausible. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. at 577, 105 S.Ct. at 1513; *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985). The fact that the written findings are in some ways different from the oral findings previously made by the court is not determinative. Oral findings and conclusions are always subject to revision as the bankruptcy court explained in this case. *See Professional Golfers Association*, 514 F.2d at 672.

### F. Application of 11 U.S.C. § 363

■■■ Appellants assert that the references in the bankruptcy court Order Confirming Plan to 11 U.S.C. § 363 were improper and that the applicability of this statute had never been mentioned before in the disclosure statement or at the confirmation hearing. The Order Confirming Plan specified that Texas Extrusion and Richard Pickens, or their respective bankruptcy trustees, sell various property to Cressona Aluminum pursuant to 11 U.S.C. § 363. Appellants allege that the references to § 363 were at the request of Lock-

heed in order to prevent appellants from unwinding the sale to Cressona in the event of a reversal of the confirmation of the Plan on appeal.[28] Evidently this was a condition demanded by Cressona before it would agree to purchase this property.

We have some doubt as to whether the application of 11 U.S.C. § 363 was proper in this case, especially with regard to Richard Pickens. Section 363 is a part of the Bankruptcy Code dealing with administrative powers. Sections 363(b) and (c) referred to in § 363(m) deal with the authority of a bankruptcy trustee to use, sell, or lease property of the estate. There is a definite implication that these provisions concern the trustee's authority during the administration of the estate and not at the final disposition of the property of the estate pursuant to a plan of reorganization. Furthermore, we have some doubt as to whether a court can order a debtor-in-possession, like Richard Pickens, to sell property under 11 U.S.C. § 363. *See Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 n. 10 (5th Cir.1985); *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983).

We, however, decline at this time to rule on the propriety of the application of 11 U.S.C. § 363 to the sale of property pursuant to a plan of reorganization. Such a sale is clearly envisioned in a Chapter 11 reorganization. *See* 11 U.S.C. §§ 1123, 1141, 1142. It is not necessary for us to decide whether the sale can be carried out pursuant to the authority in 11 U.S.C. § 363, thus invoking the shield of 11 U.S.C. § 363(m). Since we are not reversing the confirmation of the Plan the issue of whether the sale to Cressona can be unwound contrary to § 363(m) is of no relevance.

**G. Constitutional Power of the Bankruptcy Court to Confirm the Plan**

Appellants assert that the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidates the actions of the bankruptcy court in this case in confirming a reorganization plan whose major component is the valuation and settlement of several lawsuits based largely on state causes of action. One of these lawsuits, the corporate lawsuit, was pending in the bankruptcy court when the Plan was confirmed and was an asset of the Texas Extrusion estate and under the control of Trustee Stewart. This suit earlier had been referred to the bankruptcy court by the district court. The other lawsuit, the individual suit, was pending in the federal district court and was an asset of both the Pickenses' estates. The valuation of the assets of a debtor in bankruptcy, including causes of action held by the debtor, is an integral part of the confirmation process under Chapter 11. The settlement of causes of action in a plan of reorganization is expressly authorized under the Bankruptcy Code. 11 U.S.C. § 1123(b)(3). Under the Emergency Rule in effect at the time of these proceedings, the bankruptcy court retained the authority to confirm plans of reorganization. We find the bankruptcy court did have constitutional authority to confirm this plan of reorganization.

**VI. *Conclusion***

After a thorough review of the record, we find no basis upon which to upset the district court's affirmation of the bankruptcy court's confirmation of the joint plan of reorganization involving these four appellants. Nor do we see a basis upon which to grant any of the various other forms of relief requested by appellants.[29] While we agree with appellants

---

**28.** This protection is afforded by 11 U.S.C. § 363(m):

(m) The reversal or modification on appeal of an authorization under subsection (b) and (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

**29.** One of the appellants' additional requests for relief was a motion to strike portions of Lockheed's brief to this Court and portions of Lockheed's record excerpts submitted along with its

that some errors may have been made by the bankruptcy court, including the use of Bankruptcy Rule 7070 and 11 U.S.C. § 363 in the proceedings, none of these errors prejudiced appellants in any significant way. Overall, in this bankruptcy proceeding, the appellants received a fair hearing and their claims were given full consideration.

AFFIRMED.

brief. Appellants claim that Lockheed incorporated by reference portions of its briefs filed in the district court in the appeal to that court in its brief to this Court thereby getting around the 75 page limit imposed by this Court. We deny the motion to strike for the simple fact that although Lockheed's counsel's actions may have been a circumvention of the rule, the material referred to in the Lockheed brief was already present in the record before us. We are under no obligation to act on such an asserted violation and we perceive no point in doing so in this case. *Neeley v. Bankers Trust Company of Texas,* 757 F.2d 621, 634 n. 18 (5th Cir.1985).