727 F.2d 1379
 10 Collier Bankr.Cas.2d 361, Bankr. L. Rep. P 69,782
In the Matter of Leo A. JASIK and Emma L. Jasik, and L.J.
Bar Ranches, Inc., Debtors.
Leo A. JASIK and Emma L. Jasik and L.J. Bar Ranches, Inc.,
Plaintiffs-Appellants,
v.
C.S. CONRAD, Jr., Chapter 11 Trustee, et al., Defendants-Appellees.
 No. 83-1896.
 United States Court of Appeals,
Fifth Circuit.
 March 26, 1984.
 
 Bruce Waitz, Fay Cliett Gillham, San Antonio, Tex., for plaintiffs-appellants.
 Joe Warren Jones, San Antonio, Tex., for Chapter 11 Trustee.
 Claiborne B. Gregory, Jr., San Antonio, Tex., for Unsecured Creditors Comm.
 Larry G. Franceski, Houston, Tex., for amicus curiae San Antonio Bank & Trust.
 Appeal from the United States District Court for the Western District of Texas.
 Before CLARK, Chief Judge, BROWN and HIGGINBOTHAM, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 The farmer-debtors in this voluntary Chapter 11 bankruptcy proceeding appeal orders of the bankruptcy court authorizing the sale at public auction of their cattle and personal property pursuant to a reorganization plan. This court granted a temporary stay of the sale. At the conclusion of oral arguments, we vacated the stay order. This opinion sets forth our reasons for this action.
 
 I. Facts and Procedural Background
 
 2
 Leo and Emma Jasik, together with their family Texas corporation, L.J. Bar Ranches, Inc., (herein denominated collectively as "the Jasiks") are engaged in farming and ranching. They maintain approximately 1,100 head of registered cattle, which they describe as one of the largest and best known herds of Beefmaster cattle in the world, with an appraised value, as of July 1983, of nearly three million dollars. The Jasiks also maintain horses and produce peanuts, hay, and fodder. As a necessary adjunct to these activities, the Jasiks have acquired a large amount of farming equipment and numerous vehicles.
 
 
 3
 On December 20 and 21, 1982, the Jasiks filed voluntary petitions for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 1101 et seq. The Jasiks continued to operate their businesses and manage their properties as debtors-in-possession until the appointment of a Chapter 11 trustee on July 12, 1983. After the petitions were filed, the Jasiks' farming and ranching operations remained unprofitable, in part because of the special costs associated with maintaining a herd of registered cattle of this breed.
 
 
 4
 On October 11, 1983, after the Jasiks failed to develop any plan of reorganization, the trustee filed adversary proceedings under 11 U.S.C. Sec. 363(b), seeking to sell real and personal property of the Jasiks. On October 27, 1983, shortly before commencement of the hearing and trial on the adversary proceedings that same day, the trustee and official committee of creditors filed a joint plan of reorganization, dated October 26, 1983. This plan provided that property of the Jasiks could be sold as necessary to provide sufficient funds to satisfy the claims of the various classes of creditors.
 
 
 5
 On December 1, 1983, after filing of disclosure statements, notice, and hearing, the bankruptcy court entered an order approving the joint plan of reorganization, as amended. On December 5, 1983, the bankruptcy court found that the sales were necessary to implement the reorganization plan because additional delay in the sale of the livestock would hinder the funding of the reorganization plan as declines in the livestock's value and ongoing maintenance expenses would diminish the estate. The court ordered an auction sale of the Jasiks' livestock and personal property.
 
 
 6
 After notice and a hearing, the bankruptcy court denied the Jasiks' motion for a stay. After the district court also denied the Jasiks' motion for a stay, this court on December 14, 1983, entered a temporary stay. Following briefs and oral arguments, this court vacated the temporary stay order and advised the parties that this written opinion would follow.
 
 
 7
 II. Liquidation of Farmer-Debtor under Chapter 11
 
 
 8
 The Jasiks contend that the Bankruptcy Code implicitly exempts farmers from Chapter 11 liquidation proceedings. The Jasiks concede that the Bankruptcy Code does not expressly say that a farmer cannot be the subject of a liquidation plan under Chapter 11. They observe, however, that 11 U.S.C. Sec. 303(a)[1] expressly provides that a farmer cannot be placed in involuntary bankruptcy. The Jasiks also note that 11 U.S.C. Sec. 1112(c) provides that in the case of a debtor who is a farmer, the court cannot convert a Chapter 11 case to a Chapter 7 case, unless the farmer-debtor so requests. The Jasiks perceive in these express farmer exemptions and in associated legislative history special congressional solicitude toward the farmer. The Jasiks contend that it was a "mere legislative oversight" that this special solicitude did not manifest itself in a special farmer's exemption from Chapter 11 liquidation proceedings, and that the exemption is implied where it is not express. We disagree.
 
 
 9
 Congress did give farmers special defensive protections under the Bankruptcy Act. However, nowhere in the statutory language or in legislative history is there evidence of any congressional intent to confer on a farmer the offensive capability to initiate a Chapter 11 proceeding which both stays collection by his creditors and allows him, by refusing to file, to block the submission of a plan of liquidation. To the contrary, Congress has expressed the intent that debtors in voluntary bankruptcy should not be able, by merely withholding affirmative action, to suspend creditors' rights indefinitely. Before the amendments became effective in October of 1979, Chapter XI of the Bankruptcy Act did in fact give the debtor the unlimited exclusive right to file a plan of reorganization. Congress perceived a problem with this arrangement.
 
 
 10
 [c]hapter XI gives the debtor the exclusive right to propose a plan. Creditors are excluded. The exclusive right gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors, and they have little recourse except to move for conversion of the case to Chapter X. That is contrary to their interests as it is to the debtor's, and thus is rarely done. The debtor is in full control, often to the unfair disadvantage of creditors.
 
 
 11
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 231, 1978 U.S.Code Cong. & Admin.News 5963, 6191.
 
 
 12
 In response to the problem, Congress drafted 11 U.S.C. Sec. 1121,[2] which limits the debtor's exclusive rights to file a plan to clearly defined periods. Under Sec. 1121, for "120 days after the date of the order for relief" the debtor has the exclusive right to file a plan subject to the court's discretion to reduce or increase the period. The debtor must secure acceptance within 180 days from the date of the order for relief. Under 11 U.S.C. Sec. 301, "[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." Once the statutory period elapses, or upon the appointment of a trustee, see 11 U.S.C. Sec. 1121(c)(1), the debtor's exclusive right to file a plan ceases. At that time, "any party in interest" may file a plan. 11 U.S.C. Sec. 1121(c). This provision curbs the unfair disadvantage to creditors of giving the debtor perpetual exclusive rights to initiate a plan. Farmer-debtors get neither more nor less. Congress explained:
 
 
 13
 The granting of authority to creditors to propose plans of reorganization and rehabilitation serves to eliminate the potential harm and disadvantages to creditors and democratizes the reorganization process.
 
 
 14
 Bankruptcy Act Revision, Serial No. 27, Part 3, Hearings on H.R. 31 and H.R. 32 before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, 94th Cong., 2d Sess. (March 29, 1976).
 
 
 15
 When, in December of 1982, the Jasiks chose to file a voluntary petition in Chapter 11, they had the right, to the exclusion of all other parties, to file a plan of reorganization for the first 120 days or until a trustee was appointed. They proposed no plan within the statutory period. They did not petition the court for an extension of time. They still had not proposed a plan in July of 1983 when a trustee was appointed. To date their only plan is to delay the sale of their assets. Neither the letter nor spirit of Sec. 1121 will allow the Jasiks to use voluntary bankruptcy to postpone creditors' rights and also to prevent creditors from filing a plan (which under 11 U.S.C. Sec. 1123(a)(5)(D)[3] may include a liquidation), when they themselves have failed to propose any means of effecting the reorganization they initiated this Chapter 11 proceeding to achieve.
 
 III. Good Faith of Plan Proposals
 
 16
 The Jasiks argue that the trial court erred in confirming the reorganization plan, because it was not proposed in good faith. They argue that the trustee proposed to sell the assets before there was a reorganization plan, and that the reorganization plan was filed only as an afterthought, in response to the Jasiks' protests.
 
 
 17
 The Jasiks rely upon In re Braniff Airways, Inc., 700 F.2d 935, 940 (5th Cir.1983), in which we stated: "The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets." In Braniff, the trustee sought to sell substantially all of the debtor's assets pursuant to 11 U.S.C. Sec. 363(b), which provides:
 
 
 18
 The trustee, after notice and a hearing, may use, sell, or lease, other than in the course of the business, the property of the estate.
 
 
 19
 We held that where the contemplated result under a Sec. 363(b) transaction would change the composition of the debtor's assets and have the practical effect of dictating the terms of a future reorganization plan, the requirements for confirmation of a reorganization plan--including voting, confirmation, and disclosure--first had to be met.
 
 
 20
 In the instant case, although the proposal to sell the assets was made before the plan was filed, the plan was in fact filed and approved in accordance with the requirements of Chapter 11 before the sale was authorized. Such a procedure satisfies the Braniff rule.
 
 
 21
 The Jasiks argue that the "hasty and sketchy" character of the plan evidences bad faith. The "good faith" of a reorganization plan must be "viewed in light of the totality of the circumstances surrounding confection" of the plan. Public Finance Corp. v. Freeman, 712 F.2d 219, 221 (5th Cir.1983). The bankruptcy judge is in the best position to assess the good faith of the parties' proposals. Id. In this case, the bankruptcy court found that the parties were acting in good faith. No basis is demonstrated in this record upon which to fault that finding.
 
 
 22
 The Jasiks argue that the evidence shows that sale of their cattle and personal property at this time will not bring the full appraised value, that all creditors will not be paid one hundred percent, and that because all classes of creditors are potentially impaired, the plan fails to comply with 11 U.S.C. Sec. 1129(a)(8), which provides:
 
 
 23
 (a) The court shall confirm a plan only if all of the following requirements are met:
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 (8) With respect to each class--
 
 
 27
 (A) such class has accepted the plan; or
 
 
 28
 (B) such class is not impaired under the plan.
 
 
 29
 The bankruptcy court found that each class of creditors had accepted the plan. The Jasiks do not argue that this finding was clearly erroneous under Fed.R.Civ.P. 52(a), nor do we find it so. Hence the Jasiks' complaint is without merit.
 
 
 30
 For these reasons, the temporary stay order was VACATED.
 
 
 
 [1]
 11 U.S.C. Sec. 303(a) provides:
 An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.
 
 
 [2]
 11 U.S.C. Sec. 1121 provides:
 (a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.
 (b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.
 (c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if--
 (1) a trustee has been appointed under this chapter;
 (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
 (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class the claims or interests of which are impaired under the plan.
 (d) On request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
 
 
 [3]
 11 U.S.C. Sec. 1123 provides in part:
 (a) A plan shall--
 * * *
 (5) provide adequate means for the plan's execution such as--
 * * *
 (D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate....