**In re George L. AULT, Edna Virginia Ault, Debtors.**

**Bankruptcy No. 86–80478.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 11, 1986.

---

---

Charles E. Covey, Peoria, Ill., for debtors, George L. & Edna Virginia Ault.

Barry M. Barash, Galesburg, Ill., for Farmers and Merchants State Bank of Bushnell.

Douglas R. Lindstrom, Galesburg, Ill., for Federal Land Bank of St. Louis.

Richard Whitman, Stansell, Critser & Whitman, Monmouth, Ill., for Creditors Committee.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtors are farmers. They still have the exclusive right to propose a plan of reorganization. On February 21, 1986, they filed a Chapter 11 proceedings in bankruptcy, and subsequently, they filed an application to grant a security interest to facilitate the planting and harvesting of the 1986 crop. Both the Federal Land Bank of St. Louis (LAND BANK) and the Farmers and Merchants State Bank of Bushnell (BUSHNELL) are secured creditors and opposed the application and filed their own motions for relief from the automatic stay. After a hearing on the application and the motions, this Court authorized a portion of the relief requested in the application and gave the LAND BANK and BUSHNELL adequate protection.

The LAND BANK and BUSHNELL then filed a joint motion to convert to liquidation under Chapter 11. The LAND BANK and BUSHNELL contend the Debtors admitted their 1985 crop year was unprofitable and the testimony at the first hearing indicated the 1986 crop year was also going to be unprofitable, and therefore it is not feasible to expect a reorganization and the case should be converted to liquidation under Chapter 11. The Debtors counter by arguing most recent figures indicate the 1986 crop year can be profitable and they should be given an opportunity to propose a plan. There was a separate hearing on this motion, at which time the Debtors presented additional testimony concerning their projected income, expenses and profits for the 1986 crop year.

The first issue presented to this Court is whether a farmer's Chapter 11 proceeding can be converted to a liquidation under Chapter 11 while the farmer still has the exclusive right to propose a plan of reorganization. If this issue is decided affirmatively, then a second issue is presented as to whether the debtor will be able to effectuate a feasible plan of reorganization.

The LAND BANK and BUSHNELL rely on the cases of *In the Matter of Button Hook Cattle Co., Inc.,* 747 F.2d 483 (8th Cir.1984); *In the Matter of Cassidy Land and Cattle Co., Inc.,* 747 F.2d 487 (8th Cir.1984); *In the Matter of Jasik,* 727 F.2d 1379 (5th Cir.1984). The Debtors distinguish the cited cases on the grounds that in those cases the debtors' exclusive period to file a plan of reorganization had expired, and creditor proposed plans had been accepted and confirmed over the debtors' objections, while in the case before this Court the Debtors still have the exclusive right to propose a plan of reorganization, and until that exclusive right terminates and the creditors propose a liquidating plan of organization which is accepted by the creditors, this Court has no authority to proceed on such a basis.

I concur with the Debtors' interpretation of the cited cases and their position. A farmer's Chapter 11 proceeding cannot be converted to a liquidating plan until such a plan is proposed and the creditors cannot propose such a plan until the Debtors' exclusive period for filing a plan has expired. The court in both *Button Hook* and *Cassidy* relied on *Jasik*. The court in *Jasik* is clearly concerned with a farm debtor in a voluntary Chapter 11 proceeding being able to suspend creditors' rights indefinitely, a concern which Congress considered in drafting Section 1121 of the Bankruptcy Code. The *Jasik* court goes on to point out that the Jasiks filed their petition in December of 1982. Their trustee was appointed in July of 1983, and in October of 1983, after the Jasiks had failed to develop any plan of reorganization and their exclusive period had run, their trustee filed a plan to liquidate under Chapter 11. At this point in time similar concerns are not present in the case before this Court. The Debtors filed their case on February 21, 1986, and with one extension, they still have the exclusive right to file a plan of reorganization. During this six month period the Debtors not only had to proceed with their bankruptcy proceeding, but had to plant their 1986 crop as well. Therefore, it does not appear to this Court that the Debtors are using voluntary Chapter 11 proceeding to postpone creditors' rights.

It should also be noted that both the LAND BANK and BUSHNELL have been given adequate protection for the 1986 crop year and at this point in time the unsecured Creditors Committee opposes any conversion to a liquidation under Chapter 11.

The LAND BANK and BUSHNELL also cite *In re Holthoff*, 58 B.R. 216 (Bkrtcy.E.D.Ark.1985). In that case the debtors were attempting to confirm a plan of reorganization over the objections of creditors, and the issue of feasibility was considered at the confirmation hearing. The court stated:

"Finally, the plan must meet the feasibility requirements of 11 U.S.C. Section 1129(a)(11). The evidence falls far short of that goal. The debtors have accumulated a huge debt far beyond their ability to pay even assuming fortuitous weather and a substantial increase in commodity prices in the future. Fifteen months have elapsed since the petition was filed and the debtors have been unable to formulate a feasible and confirmable plan."

The facts in the case before this Court are distinguishable from those in *Holthoff*. This proceeding is in its initial stages as compared to the later stages as found in *Holthoff*. In *Holthoff* the debtors were attempting to confirm a plan of reorganization over the objections of creditors, while in the case before this Court, the unsecured Creditors Committee has yet to come to a conclusion as to whether a plan is feasible. At the first hearing before this Court the testimony indicated that after paying adequate protection to the LAND BANK and BUSHNELL there would be a loss of approximately $29,000.00 for the 1986 crop year. At the second hearing the testimony indicated there would be a profit of approximately $60,000.00 for the 1986 crop year. The LAND BANK and BUSHNELL are correct in their criticism of the Debtors' evidence at the second hearing, in that it included, as income, 1987 government support payments of $19,705.00 and failed to include as an expense the repayment of a loan made for the purpose of paying 1986 cash rent in the amount of $19,424.00. When these adjustments are made, the projected profit is approximately $21,-000.00. There was also testimony that the Debtors' son had agreed to help their profitability by transferring income from his farming operation to theirs. The testimony at both hearings concerning the profitability of the 1986 crop year involved projections. As time passes and the crop is harvested and expenses paid, the figures will move from projected to actual, and the Debtors' ability to propose a feasible plan will become clearer. At the same point in time the Debtors will have had an opportunity to propose their plan of reorganization and their creditors will have had an opportunity to decide if they considered it to be feasible. If they fail to propose their plan

of reorganization, the creditors can proceed as in *Jasik*. The issue of feasibility can be considered at that time.

For the reasons stated above, the LAND BANK and BUSHNELL's joint Motion to Convert to Liquidation under Chapter 11 is DENIED.