**In re PERO BROTHERS FARMS, INC., Debtor.**

**Bankruptcy No. 87–00995–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Aug. 29, 1988.

See also, Bkrtcy., 91 B.R. 1000.

Bush Ross Gardner Warren & Rudy, P.A., Jeffrey W. Warren, Tampa, Fla., for Official Creditors' Committee.

Daniel L. Bakst, West Palm Beach, Fla., for debtor.

Theodore A. Jewell, West Palm Beach, Fla., for Douglass E. Wendel, Examiner.

Damon & Morey, Mark W. Warren, Buffalo, N.Y., for New York Trustee.

Frederick C. Heidgerd, Ft. Lauderdale, Fla., Eugene J. Smolka, Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., for Norstar Bank.

## CONFIRMATION ORDER

THOMAS C. BRITTON, Chief Judge.

A confirmation hearing was held June 28 on a liquidation plan filed by R.E. Pyle as the New York bankruptcy trustee for Pero Farms, Inc. (not to be confused with this debtor).[1] The only filed objection (CP 121) is that of the debtor. The U.S. Trustee has recommended confirmation (CP 136).

The case has been pending since March 1987. The debtor's plan, filed in October 1987, was overwhelmingly rejected by the impaired, non-insider creditors. Confirmation was denied in March 1988. (CP 106).

A second plan filed in December 1987 by the creditors' committee was rejected by the only impaired class. Confirmation was denied in March 1988. (CP 112).

The New York trustee's plan was filed on March 31, 1988. Before confirmation he filed a Second Amended Plan on June 10 (CP 118). While that plan was under review following the confirmation hearing, he filed a motion on August 1 (CP 137) to modify the Second Amended Plan. Pursuant to 11 U.S.C. § 1127(a) and B.R. 3019 that modification was approved following a hearing held August 9.

After the rejection of two previous plans proposed by others, the plan now before the court, therefore, is the New York trustee's Second Amended Plan (CP 118) as modified (CP 137), hereafter "the plan".

### The Debtor's Objections

■ The debtor argues that this plan, which calls for the debtor's liquidation, cannot be confirmed against the debtor's wishes, because the debtor is a farmer and the Code (a) prohibits conversion of a farmer's chapter 11 case to a chapter 7 liquidation, § 1112(c), and (b) prohibits any involuntary bankruptcy proceeding against a farmer, § 303(a).

The debtor was and is a farmer as that term is defined by § 101(19, 20). (CP 40, Ex A; CP 119 at 4–6, 10).

The contention that a chapter 11 plan for the liquidation of a farmer must have the debtor's consent was rejected by the Fifth Circuit in *Matter of Jasik*, 727 F.2d 1379 (5th Cir.1984). Rehearing was denied en banc. 731 F.2d 888. *Jasik* was followed by the only other Circuit that has yet passed on this issue. *Matter of Button Hook Cattle Co., Inc.*, 747 F.2d 483, 485 (8th Cir.1984). The same contention is rejected here on that authority.

■ The debtor also objects that the plan "is not feasible". The feasibility test has no application to a liquidation plan. § 1129(a)(11).

The debtor next objects that "the plan does not provide for an adequate means of execution." Liquidation is one of 10 examples of "adequate means" identified in § 1123(a)(5)(D).

The debtor's remaining objection is that it never received the New York trustee's "first amendment" to its plan. No amendment was filed before the "second amended plan".[2]

The objections of the debtor are overruled.

### The Vote

Two classes of creditors are impaired by the plan. It was accepted by class 2 (all unsecured creditors) and rejected by class 3 (all shareholders).

---

**1.** Both corporations were formed by members of the same family. The Florida corporation was formed to continue farming operations here during the winter. Both entities are in chapter 11 bankruptcies. The Florida case was filed shortly after the New York case. There is no trustee in the Florida case.

**2.** The "Second Amendment" differs from the original plan (which is identified as and appears to be the plan filed in Buffalo for the New York debtor), only in the change of its label, the omission of several provisions which made no sense at all in this case, the repetition of page 10 on page 11, and the apparent omission of Article VI.

■ Two of the class 2 creditors who accepted the plan changed their acceptance to rejection before the voting deadline of June 28. Without their acceptance, the plan did not receive the requisite number of acceptances. The attempted change of their vote was ineffectual, because neither creditor complied with B.R. 3018:

> "For cause shown and within the time fixed for acceptance or rejection of a plan, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection."

Other than § 1129(a)(8), the plan meets all the requirements of § 1129(a).

### Cramdown

■ Rejection by an impaired class is fatal to confirmation unless cramdown is requested and permitted by § 1129(b). There is a timely request for cramdown here. (CP 118 at 13).

The provision made by the plan for the rejecting class (the shareholders) is:

> "All common shares will be cancelled automatically by the entry of an order confirming the Plan. Any excess in the Reserve Fund at Final Consummation above and beyond the full payment of Classes 1 and 2, above, shall be divided pro rata among the shareholders as they exist of record at the filing of the Plan." (CP 118 at 8).

The plan makes no provision for any interest junior to the shareholders. It therefore meets one of the two alternative requirements for cramdown. § 1129(b)(2)(C).

The plan, which meets the statutory test for confirmation, is confirmed.

### Debtor's Request for Dismissal

■ Consideration of the debtor's request (CP 121) for dismissal is reserved and will be granted upon renewal by the debtor if the New York trustee does not promptly designate a qualified Liquidator and if that individual fails to move immediately not only to protect any crop in the ground, but also to resolve its pending claim against North American Film Corp., to collect its accounts receivable, and to institute or quit talking about its claimed preference or fraud actions.

Though this plan apparently has the support of the debtor's largest secured creditor (Norstar) and its two largest unsecured creditors, who are said to represent 80% of the unsecured debt (Norstar $2 million and the New York trustee $1.6 million), these two entities and their counsel are 1500 miles away and neither has yet accomplished anything in the 17 months this case has been pending, while permitting the accrual of at least $200,000 in unpaid administrative expenses.[3] The debtor's latest D.I.P. report showed $47,355 on hand and the debtor's tangible assets (excluding its claims) are valued at $50,000. (CP 119 at 11).

### Fee Applications

A May 10 deadline was set for filing fee applications to be heard at the confirmation hearing. There are six applications (CP 62(a), 68, 72, 73, 78, and 92), the most recent of which was filed eight months ago. None can be paid until and unless the Liquidator can raise some money. A new deadline will be set and these applications may be reconsidered if and when the estate has the cash to meet them.

---

**3.** The unpaid operating expenses have been estimated by the New York trustee at $100,000. (CP 119 at 13). The attorneys' fees have been estimated by him at $70,000. (CP 119 at 12). The accountants' fees already applied for (through mid-December total $29,342 (CP 62a,

68)). These administrative claims, which include no estimate of the income tax liability and no estimate of the liquidator's fees and expenses, already total $199,342. They must be given priority over all other claims § 507(a)(1).